**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
ANGEL CREMADELLY PEREZ,             :
                                    :   Civil Action No.
            Petitioner,             :   07-2460 (FLW)
                                    :
        v.                          :   **O P I N I O N**
                                    :
ALBERTO GONZALEZ, et al.,           :
                                    :
            Respondents.            :
_____:

**APPEARANCES:**

> ANGEL CREMADELLY PEREZ, Petitioner pro se
> #24-788-279
> Middlesex County Adult Correction Center
> New Brunswick, New Jersey 07032

**FREDA L. WOLFSON, District Judge**

On May 23, 2007, Petitioner ANGEL CREMADELLY PEREZ (hereinafter "Petitioner"), a native of Cuba who entered the United States in 1980, filed the instant Petition for a Writ of Habeas Corpus (hereinafter "Petition"), pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security (hereinafter "DHS")[1] at Middlesex County Adult Correction Center.

---

[1] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security. See 6 U.S.C. § 271(a). The Act transferred the functions of the Commissioner of the Immigration and

Page -1-

For the reasons set forth below, the Court will dismiss the petition.

## BACKGROUND

Prior to his instant DHS detention, Petitioner was taken into INS custody on October 26, 1990, for the purposes of removal to Cuba.[2]  See Pet. at 4.  After being held for five years in INS custody, Petitioner was released on August 31, 1995.  See id.  A certain period after his release from the INS detention, Petitioner committed an aggravated assault and was convicted on this charge in the Superior Court of New Jersey, Atlantic County.  See id.  After Petitioner served the term of imprisonment ensuing from his offense and conviction, Petitioner was released to INS custody on February 16, 2007.[3]  See id.

Petitioner now asserts that, in view of his five years of INS detention, Petitioner's "presumptively reasonable period of

---

Naturalization Service ("INS") to the Director of BCIS, see 6 U.S.C. § 271(b), and abolished INS.  See 6 U.S.C. § 291. Accordingly, DHS replaced INS on March 1, 2003.

[2] It is unclear from the face of the petition whether Petitioner previous INS/DHS detention was a result of Petitioner committing a criminal offense or illegal residence in the United States (Petitioner never became a lawful permanent resident in the United States).  See generally, Pet.

[3] An order of removal was entered against Petitioner in November of 1993.  See Pet. at 4.  It appears that, on the basis of that order of removal, an Immigration Detainer was lodged against him while he was serving his term prison.  See id. (asserting that "[a]n immigration 'retainer' was placed on Petitioner").

removal" has expired, and Petitioner should be released because his removal to Cuba or any other country is not foreseeable. See Pet. at 5-6 (apparently relying on Zadvydas v. Davis, 533 U.S. 678, 700-701 (2001), and related cases).

## JURISDICTION

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody,"; and (2) the custody could be "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the instant Petition under § 2241 because Petitioner is detained within its jurisdiction and he asserts that his detention is not statutorily authorized and violates his constitutional rights.

## STANDARD OF REVIEW

Pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be

construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied,  399 U.S. 912 (1970).

## DISCUSSION

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  Detention during the removal period under Section 1231(a)(1)(A) is mandatory and, in addition, § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).

The "removal period" starts on the latest of the following: (1) the date when the order of removal becomes administratively final (that is, appeal to BIA was either taken and ruled upon or the time to appeal expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from confinement.  See 8 U.S.C. § 1231(a)(1)(B).

If--during the period of removal triggered by the then-latest of the three above-listed events applicable to a particular alien--the alien is subjected to a qualifying superceding event, <u>e.g.</u>, the alien released from confinement related to a criminal offense files an application seeking judicial review of the alien's removal order, or if this alien is detained/confined on a new charge or on parole revocation and then re-released, such superceding event start the alien's removal period anew. <u>See</u> 8 U.S.C. § 1231(a)(1)(B).

> [There cannot] be ["]only one["] removal period[:] . . . that is the only rational reading of the statute. . . . [T]he statute provides that the removal period begins on the latest of several dates. The passing of one date does not stop the operation of the statute. In a sense, the only way to apply the statute to a given situation is retrospectively. That is, the removal period begins when the removal order becomes final. If a court issues a stay [or a new detention unrelated to removal proceedings takes place], the removal period begins [anew] when the stay is lifted [or when such new detention ends]. Therefore, the only way to determine when the removal period begins, or began, is to look at what events already have occurred. If there is another potential event, there is another potential beginning date for the removal period. The only sensible reading of this provision is that [DHS/ICE] is required to effectuate the removal within 90 days of certain events, but will have another 90 days if another one of the designated events occurs at a later date. The obvious reason for this is that [DHS/ICE] 's authority to effect the removal is suspended due to the occurrence of the later event (such as a stay order [or a new detention on criminal charges]).

<u>Michel v. INS</u>, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000); <u>accord</u> <u>Morena v. Gonzales</u>, 2005 U.S. Dist. LEXIS 37989, at *18 (M.D. Pa. Oct. 4, 2005); <u>Atkinson v. INS</u>, 2002 U.S. Dist. LEXIS 11335, at *5

(E.D. Pa. June 25, 2002); <u>Marcelus v. INS</u>, 2002 U.S. Dist. LEXIS 795, at *6 (E.D. Pa. Jan. 16, 2002); <u>Dunbar v. Holmes</u>, 2000 U.S. Dist. LEXIS 17048, at *6-7 (E.D. Pa. Nov. 28, 2000).

While, during the 90-day "removal period," the alien must be detained, see id. § 1231(a)(2), after the 90-day removal period, the government may further detain the alien or release him subject to conditions of release.  <u>See</u> <u>id.</u> § 1231(a)(6).  However, in <u>Zadvydas</u>, the Supreme Court held that aliens may be detained further under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689 (holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States [and] does not permit indefinite detention"). Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts" recognized a six-month " presumptively reasonable period of detention." <u>Id.</u> at 700-01. However, coining this "presumptively reasonable period of detention," the Supreme Court stressed that,

> [a]fter this 6-month period, o[nly if] the alien provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.

> *This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.* To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701 (emphasis supplied).

It appears that, in view of Petitioner's release from confinement into DHS custody on February 16, 2007, Petitioner's removal period began to run on February 16, 2007, that is, three and a half months ago. The fact that Petitioner already experienced five years of INS detention (during the previous century) is of no consequence: Petitioner's period or removal started running anew after Petitioner was released from his criminal confinement on February 16, 2007. See 8 U.S.C. § 1231(a)(1)(B); Michel, 119 F. Supp. 2d at 498; Morena, 2005 U.S. Dist. LEXIS 37989, at *18 ; Atkinson, 2002 U.S. Dist. LEXIS 11335, at *5; Marcelus, 2002 U.S. Dist. LEXIS 795, at *6; Dunbar, 2000 U.S. Dist. LEXIS 17048, at *6-7.

Since Petitioner's current presumptively reasonable period of detention began to run on February 16, 2007. See 8 U.S.C. § 1231(a)(1)(B), Petitioner's instant Zadvydas period is to expire on or about August 16, 2007, that is, about in two and a half months after the date of this Opinion. See Zadvydas v. Davis, 533 U.S. at 701. Therefore, Petitioner current detention is fully lawful, and his Petition should be dismissed.

**CONCLUSION**

For the foregoing reasons, Petitioner's Petition will be denied.

An appropriate Order accompanies this Opinion.[4]


                                    s/Freda L. Wolfson
                                **FREDA L. WOLFSON**
                                **United States District Judge**
Dated: June 5, 2007

---

[4] This Court, however, notes that Petitioner is free to file another § 2241 petition should, upon expiration of Petitioner's Zadvydas period, Petitioner develop *good evidence* that his removal is no longer reasonably foreseeable.